**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

MICHAEL L. BOYD,
ADC #115890                                                                                    PLAINTIFF

v.                                           4:20-cv-00129-DPM-JJV

GREGORY RECHCIGL,
Health Services Administrator, EARU, *et al.*                                    DEFENDANTS

<u>**PROPOSED FINDINGS AND RECOMMENDATIONS**</u>

<u>**INSTRUCTIONS**</u>

The following recommended disposition has been sent to Chief United States District

Judge D.P. Marshall Jr.    Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.    If

the objection is to a factual finding, specifically identify that finding and the evidence that supports

your objection.    Your objections must be received in the office of the United States District Court

Clerk no later than fourteen (14) days from the date of the recommendations.    Failure to file

timely objections may result in waiver of the right to appeal questions of fact.

<u>**RECOMMENDATION**</u>

**I.      INTRODUCTION**

Michael L. Boyd ("Plaintiff") is a prisoner in the East Arkansas Regional Unit of the

Arkansas Division of Correction ("ADC").    He has filed a *pro se* Amended Complaint, pursuant

to 42 U.S.C. § 1983, alleging former Health Service Administrator ("HSA") Gregory Rechcigl,

former Assistant HSA Tammy Kimble, Dr. Gary Kerstein, and Advance Practice Registered Nurse

("APRN") Patrick Drummond failed to provide him with constitutionally adequate medical care

for chronic ulcerative colitis ("UC").[1]  (Doc. 4.)  All other claims and Defendants have been previously dismissed.  (Docs. 53, 61, 79, 80, 136.)  Due to the statute of limitations and Plaintiff's exhaustion of administrative remedies, the Court has limited Plaintiff's claims to those arising from February 6, 2017 to September 23, 2019.  (Docs. 53, 79, 136.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to judgment as a matter of law.  (Docs. 147-149.)  Plaintiff has filed a Response.  (Doc. 167.) After careful consideration and for the following reasons, I recommend the Motion be GRANTED; Plaintiff's claims against Defendants Rechcigl, Kimble, Kerstein, and Drummond be DISMISSED with prejudice; and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.    Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).    When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.    *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).    The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.    *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).    The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere

---

[1] UC is a chronic inflammation of the mucosa of the colon.  (Doc. 149 at 2; Doc. 149-3 at 1.) Medication is used to control UC symptoms and possibly place the disease in remission.  (*Id.*) But the only "cure" is removal of the colon.  (*Id.*)

speculation, conjecture, or fantasy.  *Id.* (citations omitted).   A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).   Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.  ANALYSIS

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care."  *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).   To defeat summary judgment and proceed to trial on his Eighth Amendment inadequate medical care claim, Plaintiff must have evidence, viewed in the light most favorable to him, that: (1) he had an objectively serious need for medical care for UC; and (2) Defendants Drummond, Rechcigl, Kimble, and Kerstein subjectively knew of, but deliberately disregarded, that serious medical need.  *See Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018). The parties agree Plaintiff had an objectively serious medical need for UC treatment.   Thus, this case turns on the second element of deliberate indifference, which is a high threshold that goes well beyond negligence or gross negligence.  *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).   To establish deliberate indifference, there must be evidence the defendants "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk."  *Shipp,* 9 F.4th at 703 (emphasis in the original). This level of mental culpability is "akin to criminal recklessness."  *Id*.   For the following reasons, I conclude the evidence viewed in the light most favorable to Plaintiff does not establish that any of the Defendants acted with deliberate indifference.

3

A.    **APRN Drummond**

Plaintiff says APRN Drummond failed to provide him with adequate medical care for UC from February 6, 2017 to March 26, 2018.   (Doc. 92-1 at 64-78; Doc. 167.)   But the medical records demonstrate APRN Drummond first treated Plaintiff's UC on March 12, 2017, by ordering a bowel prep for a scheduled colonoscopy.   (Doc. 149-1 at 69-76, 81-92, 93-95; Doc. 149-4 at 2-3.)   On March 15, 2017, a private gastroenterologist was unable to complete the colonoscopy due to Plaintiff's failure to follow the prep procedures.   (*Id.*)   So, the specialist ordered an air contrast barium enema and a follow-up appointment in six months, which APRN Drummond scheduled.   (*Id.*)   Meanwhile, APRN Drummond gave Plaintiff mesalamine[2] as recommended by the specialist, prescribed Tylenol #3 for pain, and ordered an abdominal CT.   (*Id.*)

On June 21, 2017, Plaintiff had the barium enema which showed no colonic masses. (Doc. 149-1 at 60-66, 93-95; Doc. 149-4 at 3-4.)   Similarly, on June 29, 2017, the abdominal CT revealed a thickened sigmoid colon, which was consistent with Plaintiff's UC diagnosis.   (*Id.*) On July 13, 2017, APRN Drummond prescribed metronidazole to treat a possible bowel infection and increased Tramadol, which had been prescribed by another prison medical provider to ease Plaintiff's pain.   (*Id.*)   On August 9, 2017, APRN Drummond examined Plaintiff, ordered blood work, denied his request for a high calorie/protein diet as not medically indicated, and renewed his prescriptions.   (*Id.*)

On August 16, 2017, Plaintiff saw the specialist, who reviewed the barium enema and CT results with Plaintiff.   (Doc. 149-1 at 43-47, 50-59, 72, 96; Doc. 149-4 at 4-5.)   The specialist

---

[2] Mesalamine is a non-steroid anti-inflammatory that is sold under the brand names Apriso (when administered orally) and Rowasa (when given by enema).   Plaintiff received both forms of mesalamine interchangeably.   (Doc. 149-3.)

made the confusing recommendation that Plaintiff stop taking mesalamine and start taking Apriso (which is oral mesalamine) four times a day.   (*Id.*)   But Plaintiff was already receiving Apriso four times a day, and he was not taking Rowasa (mesalamine by enema).   (*Id.*)   On August 17, 2017, APRN Drummond continued Apriso and ordered a follow-up appointment with the specialist in five months.   (*Id.*)   On September 21, 2017, APRN Drummond examined Plaintiff, continued his prescription for Apriso, discontinued Tramadol because it was not recommended by the specialist, and added Tylenol.   (*Id.*)   Later, on November 20, 2017, APRN Drummond continued nortriptyline, which had been prescribed by another prison doctor to treat Plaintiff's pain.   (*Id.*)   On December 6, 2017, APRN Drummond discontinued that medication because Plaintiff said it was not working, and on December 20, 2017, he prescribed Keppra instead.   (*Id.*)

On January 30, 2018, Plaintiff returned to the specialist, who continued Apriso, recommended another colonoscopy, and recommended Plaintiff stop taking metronidazole, which is a skin medication.   (Doc. 149-1 at 27-28, 65, 97-98; Doc. 149-4 at 5-6.)   But, that recommendation was unnecessary because the prescription expired in July 2017. APRN Drummond ordered the colonoscopy prep, and a non-party continued the Apriso.   (*Id.*)   On February 20, 2018, APRN Drummond saw Plaintiff in response to his complaints of abdominal pain and decided not to change any medications until after the coloscopy and follow-up appointment with the specialist.   (*Id.*)

On March 2, 2018, the specialist performed the colonoscopy, continued mesalamine, and added a steroid called Budesonide.   (Doc. 149-1 at 22-25, 99-102; Doc. 149-4 at 6.)   On March 9, 2018, APRN Drummond followed each of those recommendations, and he did not see Plaintiff again in March of 2018.   (*Id.*)

Nothing in the record demonstrates Defendant Drummond acted with deliberate

indifference when he treated Plaintiff's UC.   To the contrary, the undisputed evidence demonstrates he gave Plaintiff both forms (Apriso and Rowasa) of mesalamine to treat UC, prescribed a variety of pain medications (Tylenol, Tramadol, Nortriptyline, and Keppra), scheduled diagnostic testing (CT scans, a barium enema, colonoscopies, and blood work), ordered the necessary preparations for those tests, treated a possible bowel infection, and followed the specialist's recommendations.   *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"); *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (same).

Plaintiff says APRN Drummond did not prescribed the correct medications to alleviate his UC symptoms and associated pain.   (Doc. 92-1 at 64-78; Doc. 167.)   But, a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."   *Barr v. Pearson,* 909 F.3d 919, 921–22 (8th Cir. 2018); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment").   And, Dr. Chris Horan, who is the Regional Medical Director for Wellpath, says in his sworn declaration that it is his professional medical opinion APRN Drummond "provided good and appropriate care" for Plaintiff's UC. (Doc. 149-4 at 7.)   "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019); *Dulany,* 132 F.3d at 1240 (same). Plaintiff has not offered any evidence to contradict Dr. Horan's expert opinion.   Accordingly, I find Defendant Drummond is entitled to summary judgment on the inadequate medical care claim

Plaintiff has raised against him.

**B.    HSA Rechcigl**

Plaintiff says Defendant HSA Rechcigl was deliberately indifferent to his medical needs on six occasions.   First, Plaintiff claims HSA Rechcigl is responsible for him unnecessarily enduring a three-day colonoscopy prep from May 20 to 23, 2018.   (Doc. 92-1 at 79-82; Doc. 167.)   The parties dispute whether ADC medical providers or the specialist canceled the colonoscopy. (Doc. 149-4 at 7-8; Doc. 167 at 5.)   But, there is no evidence Rechcigl, a Health Services Administrator, was personally involved in scheduling or canceling the colonoscopy and prep.   In § 1983 actions, prison supervisors cannot be held vicariously liable for constitutional violations committed by their subordinates.   *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, supervisors, as all § 1983 defendants, can only be held liable if they have, "through [their] own individual actions," violated the Constitution.   *Id.*   For instance, supervisors can be liable if "their corrective inaction amounts to deliberate indifference or tacit authorization of the violative practices."   *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).   To proceed with a corrective inaction claim, there must be evidence a supervisor received "notice of a pattern of unconstitutional acts committed by subordinates" but fail to correct it.   *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010).   A single incident or series of isolated incidents generally does not support a corrective inaction claim.   *Howard v. Adkinson*, 887F.2d 134, 138 (8th Cir. 1989). And, "[t]o impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability."   *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012).   Here, there is no evidence HSA Rechcigl was aware of a pattern of Plaintiff being unnecessarily prepped for colonoscopies or other diagnostic procedures.

Second, Plaintiff says HSA Rechcigl was somehow responsible for his failure to receive

mesalamine enemas on May 24, 25, 27, 30, and June 1, 2018.    (Doc. 92-1 at 83-86; Doc. 167).
It is unclear why the medication was unavailable in the infirmary on those days.    (Doc. 149-4 at
8.)    But, according to Dr. Horan's and HSA Kimble's unchallenged declarations, HSA Rechcigl
was not responsible for obtaining or dispersing medications.    (Doc. 149-4; Doc. 149-5.)
Similarly, there is no evidence HSA Rechcigl was aware of a pattern of Plaintiff not properly
receiving his medications.    Finally, Dr. Horan says in his declaration that Plaintiff's UC was not
adversely affected by the temporary delay in receiving his medication.    (Doc. 149-4.)    Plaintiff
has not offered any contrary evidence.    *See Redmond v. Kosinski,* 999 F.3d 1116, 11121 (8th Cir.
2021) (to avoid summary judgment, a plaintiff must "place verifying medical evidence in the
record to establish the detrimental effect of the alleged delay in medical treatment").

Third, Plaintiff says nurses wrote in his records that he did not report to the infirmary for
his enema from October 14 to 31, 2018 and that HSA Rechcigl is somehow responsible.  (Doc.
92-1 at 91-95; Doc. 167.)   But, that assertion is contradicted by the medical records (Doc. 149-1
at 6-11) which say Plaintiff reported to the infirmary for treatment on each of those days.  *See
Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one
of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court
should not adopt that version of the facts for purposes of ruling on a motion for summary
judgment").

Fourth, Plaintiff says he received his September 20, 2018 biopsy results late and HSA
Rechcigl is responsible for that delay.   (Doc. 92-1 at 87-90; Doc. 167.)   According to the medical
records, prison medical providers reviewed the biopsy results with Plaintiff on November 6, 2018
and December 7, 2018.  (Doc. 149-1 at 2-4.)   Plaintiff says he reported to the infirmary on
November 6, 2018 but did not actually get to review his results because the non-party provider

was in a meeting.   (Doc. 167 at 14.)   But, he does not say he was unable to review his results on December 7, 2018.   (*Id.*)   There is no evidence HSA Rechcigl was involved in the delay or aware of a pattern of delays in Plaintiff receiving his test results.   And, Dr. Horan says in his declaration that there was no harm caused by the delay because the biopsy results were consistent with Plaintiff's prior UC diagnosis.   (Doc. 149-4 at 9.)   Plaintiff has not presented any evidence challenging that expert opinion.

Fifth, Plaintiff says HSA Rechcigl failed to ensure he had timely follow-up visits with his specialist after April 5, 2019.   (Doc. 92-1 at 101-104; Doc. 167.)   That assertion is clearly contradicted by the medical records demonstrating Plaintiff had follow-up appointments on June 4, 2019 and July 25, 2019, as recommended by the specialist.   (Doc. 149-1 at 113-119.)   More importantly, there is no evidence HSA Rechcigl was responsible for scheduling such appointments or aware of a pattern that Plaintiff was not being taken to his follow-up appointments.

Finally, Plaintiff claims HSA Rechcigl was deliberately indifferent by failing to ensure that he received Humira for treatment of UC as recommended by a specialist.   (Doc. 92-1 at 105-108; Doc. 167.)   According to the medical records, a specialist recommended Plaintiff start Humira on September 6, 2019.   (Doc. 149-2 at 1-3.)   However, as will be discussed later in this recommendation, the specialist changed his mind during a September 23, 2019 telephone conversation with Defendant Dr. Kerstein.   (*Id*. at 4-6.)   And, Dr. Horan says in his declaration that HSA Rechcigl did not prescribe medications or have the authority to order Humira for Plaintiff.   (Docs. 149-4 at 9.)   Similarly, there is no evidence he received notice of a pattern of Plaintiff receiving inadequate medications to treat his UC.   Because there is no evidence HSA Rechcigl was deliberately indifferent to Plaintiff' medical needs, I conclude he is entitled to summary judgment.

9

### C.    Assistant HSA Kimble

Plaintiff claims HSA Kimble was deliberately indifferent by failing to ensure that he received mesalamine on May 4, 2019.   (Doc. 92-1 at 96-100.)   Defendant Kimble says in her declaration that she played no role in ordering or dispensing medications.   (Doc. 149-5.)   There is no contrary evidence in the record.   And, as previously mentioned, prison supervisors cannot be held liable for failing to correct an isolated incident.   Finally and most importantly, Dr. Horan says that in his expert opinion, Plaintiff was not harmed by that one-day delay in receiving his medication.   (Doc. 149-4 at 10.)   Thus, I find Defendant Kimble is entitled to summary judgment.

### D.    Dr. Kerstein

Plaintiff says Dr. Kerstein was deliberately indifferent when he refused to give him Humira as prescribed by a specialist.   (Doc. 92-1 at 105-112; Doc. 167.)   On September 6, 2019, a specialist recommended Plaintiff start Humira injections.   (Doc. 149-2 at 1-3.)   On September 7, 2019, the ADC Regional Medical Director (who is not a party) cancelled that order because the medication was expensive, and the specialist had not explained why it was necessary when Plaintiff's UC was improving on his existing drug regime.   (*Id*. at 4.)   On September 23, 2019, Dr. Kerstein called the specialist to discuss the matter, and the specialist recommended Plaintiff try thiopurine antimetabolites before switching to Humira.   (*Id*. at 5-6, 13.)   Dr. Kerstein then implemented that revised treatment plan.   (*Id.*)   During an October 8, 2019 examination, the specialist noted that Plaintiff's UC had improved, and he did <u>not</u> recommend Plaintiff start Humira.[3]   (*Id*. at 15.)

---

[3] Even if the specialist had continued to recommend Humira, a mere disagreement between medical doctors is "a classic example of a matter for medical judgment that does not rise to the level of cruel and unusual punishment." *Long v. Nix*, 86 F.3d 761, 766 (8th Cir. 1996).

Dr. Nannette Vowell, who is an internal medicine specialist with experience treating UC, says in her sworn declaration that it was medically appropriate to try thiopurine antimetabolites before using Humira and that Dr. Kerstein appropriately treated Plaintiff's UC.    (Doc. 149-3.) Plaintiff has not offered any contrary evidence.    As previously mentioned, prisoners are not constitutionally entitled to receive a particular course of treatment, and prison officials are free to exercise their professional medical judgment.    Accordingly, I conclude Defendant Dr. Kerstein is also entitled to summary judgment.

That being said, I am not unsympathetic to the pain and complications Plaintiff has endured as a result of having chronic UC.    But, nothing in the record suggests Defendants acted with deliberate indifference when they treated his medical condition with a variety of medications, repeated tests, and periodic consultations with specialists.

IV.    **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. 147) be GRANTED; Plaintiff's inadequate medical care claims against Defendants Rechcigl, Kimble, Kerstein, and Drummond be DISMISSED with prejudice; and this case be CLOSED.

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order and Judgment adopting these recommendations would not be taken in good faith.

DATED this 25th day of January 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE